# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# 10-0562


**CENTRAL LOUISIANA AMBULATORY
SURGICAL CENTER, INC. (LORRAINE BRYANT)**

**VERSUS**

**RAPIDES PARISH SCHOOL BOARD**


\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DIST 02
PARISH OF RAPIDES, NO. 08-02856
HONORABLE JAMES BRADDOCK
WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.


**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**



**R. Bray Williams
Joseph Payne Williams, Sr.
Williams Family Law Firm, LLC
Post Office Box 15
Natchitoches, LA 71458-0015
(318) 352-6695
COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Central Louisiana Ambulatory Surgical Center, Inc.**

**Roger A. Javier**
**Amanda H. Baxter**
**The Javier Law Firm**
**800 Energy Centre**
**1100 Poydras Street**
**New Orleans, LA 70163**
**(504) 599-8570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Rapides Parish School Board**

PETERS, J.

The Rapides Parish School Board (School Board) appeals a judgment rendered by the workers' compensation judge (WCJ) in favor of the Central Louisiana Ambulatory Surgical Center, Inc. (CLASC), awarding CLASC recovery of $2,604.60 for medical services rendered to one of the School Board's injured employees, $2,000.00 in statutory penalties, and $4,500.00 in attorney fees. We reverse the WCJ award of statutory penalties, but affirm the judgment in all other respects. Additionally, we render judgment in favor of CLASC and against the School Board in the amount of $1,500.00 as an additional attorney fee for work performed on appeal.

## DISCUSSION OF THE RECORD

This appeal is one of eleven cases now before this panel involving the same litigants and raising the same legal issue. In each case, an employee of the School Board sustained a injury compensable under the Louisiana Workers' Compensation Act and received medical treatment through CLASC. In each case, the School Board, through its workers' compensation administrator, Gallagher Bassett Services, Inc. (Gallagher Bassett), initially applied La.R.S. 23:1034.2 and La.Admin.Code tit. 40, part I, § 2507 to reduce CLASC's medical charges by ten percent. However, the School Board further reduced the charges by an additional twenty percent before tendering payment to CLASC. The correctness of the twenty percent reduction is the single issue in all eleven cases.

All of the disputes now before us have the same undisputed factual background and arise from a series of contracts involving a preferred provider organization (PPO) which discounts its payments to CLASC by twenty percent. They begin with a 1996 contract between CLASC and Affordable Health Care Concepts (Affordable) which

had as its purpose CLASC's participation in a Preferred Provider Panel by which Affordable would offer discounted medical services to those insured under the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS).

Section 1 of Article 4 of the CHAMPUS contract addressed provider billing and payment and provided, in pertinent part, that "[f]or claims covered under Workers' Compensation, contract rate shall not exceed the amount otherwise allowed for a workers [sic] compensation claim." Section D of Appendix A, entitled "AFFORDABLE OUTPATIENT CARE NETWORK REIMBURSEMENT," and attached to the contract, provided:

> Reimbursement from Workers' Compensation Payors for services rendered to occupationally ill/injured employees shall be as follows:
>
> (1) If any state law or regulation establishes rules or guidelines for the payment of health care services, reimbursement shall not exceed <u>80</u>% of the maximum amount payable under such rules or guidelines. Any procedure code which is unvalued shall be reimbursed pursuant to Section A, Paragraph (3), of this Appendix. This rate of reimbursement shall apply whether such rules or guidelines are in existence at the time of execution of this agreement or established at a later time.
>
> (2) In the absence of any state law or regulation set forth in Section D, Paragraph (1), reimbursement shall be the method set forth in Section A, Paragraph (1), (2) and (3) of this Appendix, but in no event shall reimbursement exceed the usual and customary charge for the services, as determined by AFFORDABLE or Payor.

Sometime after CLASC entered into the contract, Affordable evolved into what is now the defendant in this case, First Health.

In 2001, the School Board contracted with Gallagher Bassett to provide it with, among other things, services relating to the administration of its workers' compensation claims. At the time, Gallagher Bassett had contracts with various other entities, including First Health. Gallagher Bassett's relationship with First Health

2

gave it access to First Health's network and the advantages of First Health's bill review and front-end processing services. In other words, there was no direct contract between CLASC and the School Board. Rather, the basis of this suit and the remaining ten suits is the School Board's underpayment of medical services that CLASC provided to its employees based on contracts emanating from First Health.

In the matter now before us, the School Board's injured worker is Lorraine Bryant, and it is not disputed that Ms. Bryant sustained an injury compensable under the Louisiana Workers' Compensation Act, that CLASC provided medical care to Ms. Bryant on two separate occasions ($10,214.00 on one occasion and $4,256.00 on another, totaling $14,470.00), and that medical care was for the treatment of her compensable injuries. In handling CLASC's claim for payment, Gallagher Bassett first deducted $1,021.40 and $425.60 (the statutory ten percent) from the total submitted. It then reduced each charge by an additional twenty percent ($1,838.52 and $766.08). The additional twenty percent was based on the provisions of First Health's contract with CLASC. After making both reductions, the School Board then tendered two separate checks ($7,354.08 and $3,064.32) to CLASC as payment in full for the services rendered to Ms. Bryant.

CLASC brought this claim to recover the twenty-percent underpayment from the School Board, and the litigants submitted the issue to the WCJ based on stipulations and briefs. The WCJ ultimately rendered judgment in this case as well as the other ten now before us, awarding CLASC judgment for the twenty percent at issue, penalties, and attorney fees. In doing so, the WCJ concluded that the School Board could not rely on contracts with a PPO to reduce the amounts paid for medical services provided by CLASC to its injured employee. This appeal followed.

3

In their appeal of this and the other ten cases now before us, the School Board raised four assignments of error:

1. The trial court erred in ruling that, although parties may contract for discounts from the maximum amount payable under the Louisiana Workers' Compensation Reimbursement Schedule, the contracts utilized by the medical provider and Rapides Parish School Board. [sic] ("RPSB") for discounts are not authorized by the Louisiana Workers' Compensation Act.

2. The trial judge erred in ruling that the contract utilized by the medical provider and RPSB for discounts from the maximum amount payable under the Louisiana Workers' Compensation Reimbursement Schedule must be specifically and affirmatively authorized by the Louisiana Workers' Compensation Act.

3. The trial court erred in ruling that RPSB was arbitrary and capricious in relying upon contracts voluntarily entered into by the parties providing for discounts from the maximum amount allowed under the Louisiana Workers' Compensation Reimbursement Schedule and awarding penalties and attorney fees against RPSB.

4. The trial court erred in assessing penalties and attorney's fees against RPSB under La. Rev. Stat. 23:1201.

CLASC answered the appeal requesting an award of additional attorney fees for work performed on appeal.

**OPINION**

The School Board's first two assignments of error can be reduced to one question: Can an employer reimburse a health care provider at an amount below that provided by the Louisiana Workers' Compensation Act's reimbursement schedule? In a concurring opinion rendered in *Beutler England Chiropractic Clinic v. Mermentau Rice, Inc.*, 05-942, p. 4 (La.App. 3 Cir. 5/31/06), 931 So.2d 553, 561 (first alteration ours), the writer of this opinion, joined by five of the twelve judges on this court, recognized that the answer to this question is "no."

4

As they did in *Beutler England Clinic* [*v. Market Basket No. 27*, 05-952 (La.App. 3 Cir. 12/30/05)], 919 So.2d 816, the defendants have attempted to interpose the preferred provider organization (PPO) contract as a defense to full payment, asserting that the attendant issues remove the dispute from the jurisdiction of the OWCA. In doing so, the employer and its insurer ignore the clear language of La.R.S. 23:1033, which provides that "[n]o contract, rule, regulation or device whatsoever shall operate to relieve the *employer*, in whole or in part, from any liability created by this Chapter except as herein provided." (Emphasis added.) As stated in my dissent in *Beutler England Clinic*, 919 So.2d at 821,

> [T]o the extent that the PPO contract purports to further limit the employer's liability for medical care, it runs afoul of La.R.S. 23:1033 and may not serve as a basis to reduce the amount owed to Beutler England for the treatment of [the injured employee]. Because the PPO contract may not serve as a basis to reduce the amount owed for the treatment of [the injured employee], Beutler England's claim is properly before the OWC pursuant to La.R.S. 23:1034.2(F)(1) as a garden-variety medical expense claim. Whatever remaining rights the defendants have vis-à-vis the PPO, in light of the Workers' Compensation Act's express disallowal of contracts in contravention of its provisions, is another issue for another forum.

This same issue has recently been addressed in *Central Louisiana Ambulatory Surgical Center, Inc. v. Payless Shoesource, Inc.*, 10-86, 10-91, 10-92, 10-96, 10-97, 10-99, 10-100, 10-115, 10-117, 10-118, (La.App. 3 Cir. 7/28/10), __ So.3d __, *rehearing granted,* (La.App. 3 Cir. 10/20/10), ___ So.3d ___, and *Agilus Health v. Accor Lodging North America*, 09-1049 (La.App. 3 Cir. 3/10/10), 32 So.3d 1120, *writ granted*, 10-800 (La. 6/18/10), 38 So.3d 312. We agree with the holdings in those opinions and incorporate the analysis in both as though set out herein in full. That being the case, we find no merit in the School Board's first assignment of error.

With regard to the penalty and attorney fee issues, the panel in *Central Louisiana Ambulatory Surgical Center, Inc.* reversed the WCJ awards while the panel in *Agilus Health* affirmed the WCJ awards and awarded additional attorney fees for

the work performed on appeal. The panel in *Central Louisiana Ambulatory Surgical Center, Inc.* initially concluded that the defendant School Board had reasonably controverted the claim. However, on rehearing, the panel reversed its position on the penalty and attorney fee award based on the failure of the defendants to comply with the notice requirements of La.R.S. 40:2203.1. With regard to the penalty issue, the plaintiff in the matter before us did not raise the notice issue and, therefore, we agree with and choose to follow the holding in the original opinion of *Central Louisiana Ambulatory Surgical Center, Inc.* However, with regard to the attorney fee issue, we agree that the attorney fee award should be affirmed, but for different reasons from those expressed in either *Central Louisiana Ambulatory Surgical Center, Inc.* or *Agilus Health.* We conclude that the WCJ may impose an award of attorney fees as an item of recovery separate from the penalty issue.

In reaching the conclusion that the attorney fee award should be upheld, we first note that the time and place of payment of workers' compensation benefits, as well as medical expenses, is governed by La.R.S. 23:1201(A) through (E). The penalties for failure to make timely payments of compensation and/or medical expenses are set forth in La.R.S. 23:1201(F). That statute provides:

> Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 *shall* result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any

6

and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties *shall* be assessed in the following manner:

(1) Such penalty and attorney fees *shall* be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.

(2) This Subsection *shall not apply if the claim is reasonably controverted* or if such nonpayment results from conditions over which the employer or insurer had no control.

(3) Except as provided in Paragraph (4) of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.

(4) *In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider.* This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.

(5) No amount paid as a penalty or attorney fee under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance.

(Emphasis added.)

The initial paragraph of La.R.S. 23:1201(F) provides that the mandatory penalty available to a claimant is comprised of two parts: (1) a percentage of the unpaid compensation subject to a maximum amount, *and* (2) a reasonable attorney fee. With regard to a health care provider's claim, an award of anything but the amount owed is subject to the WCJ's discretion, although that discretion is limited to some extent by the "reasonably controverted" requirement of La.R.S. 23:1201(F)(2). Additionally, while La.R.S. 23:1201(F)(4) refers to the award of "penalties," we interpret that to mean only the statutory penalty provided for in

7

La.R.S. 23:1201(F).[1] That is to say, the WCJ is vested with discretion to impose the twelve percent penalty as provided for by the statute and/or a separate "reasonable attorney fee based upon actual hours worked." La.R.S. 23:1201(F)(4). Thus, while the WCJ's discretion to award the twelve percent penalty is still subject to the "reasonably controverted" requirement of La.R.S. 23:1201(F)(2), the attorney fee award is not as the obvious intent of the statutory scheme is to award an attorney fee similar to that awarded in an open account collection action. Given the small nature of the amount normally at issue, any other interpretation would make the attempted collection by the health care provider a financially infeasible proposition. Thus, we find no error in the WCJ's award of attorney fees to CLASC.[2]

We also find that CLASC is entitled to an additional attorney fee award of $1,500.00 for work performed on appeal. We award this amount based on the mandate of La.R.S. 23:1201(F)(4) that the reasonable attorney fee be "based upon actual hours worked." Given that the issue is basically the same in all eleven cases now before us, we find this amount reasonably appropriate.

## DISPOSITION

For the foregoing reasons, we reverse the WCJ's $2,000.00 statutory penalty award to Central Louisiana Ambulatory Surgical Center, Inc. We affirm the judgment in all other respects and award Central Louisiana Ambulatory Surgical Center, Inc. an additional attorney fee of $1,500.00 for legal work performed on appeal. We assess all costs of this appeal equally between Central Louisiana Ambulatory Surgical Center, Inc. and the Rapides Parish School Board.

---

[1]To conclude otherwise would be to give the WCJ authority to award two attorney fees for the same collection efforts.

[2]Our holding affirming the WCJ's award of attorney fees does not address the amount of attorney fees awarded as this issue was not raised by the School Board on appeal.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**